I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. It's good to have you here. We have four interesting cases and at least eight outstanding lawyers, and it's really good to be here. And Judge Richards and I in particular want to welcome Judge Dawson to the Fourth Circuit Court of Appeals. It's an honor to have him with us and to assist us in the handling of our work. With that, in the first case, it says Walsh v. Medical Staffing, I think probably there's somebody other than Walsh, it's the Labor Secretary now, I don't know who it is, but Good morning, Your Honors. Abram Peffert on behalf of Appellants Medical Staffing of America, DBA, Steadfast Medical, and Lisa Pitts. May it please the Court, this appeal is a worker classification dispute arising under the Fair Labor Standards Act involving more than 1,000 skilled nurses at dozens of medical facilities spread across multiple states over a six-year period. All of the nurses invested in their own training, licensing, and equipment and routinely exercised proactive control over their work schedules, including on the threshold decision of whether to work at all during any given pay period. The core economic reality of Steadfast's relationship with these nursing workers is embodied in three propositions that we believe are not in dispute. First, Steadfast exercised almost no control over the manner in which the nurses performed their medical work. Second, from the District Court's own findings, the nurses had a high degree of autonomy with respect to when, where, and under what conditions they worked, were able to accept or decline shifts while not being held to a minimum or maximum number of hours. Third, 17 of the 20 nurses who testified at trial were asked whether they... Before we get into all that detail, how do we have jurisdiction here? We believe you have jurisdiction over the liability question that was the foundation of the District Court's injunction under the portion of the statute that authorizes appellate jurisdiction over interlocutory orders that grant injunctions. You concede there's an interlocutory order. Yes. So we don't have jurisdiction over everything that you all have briefed at all. We don't. What I would... You claim it's an injunction, that you're appealing from the entry of an injunction. Correct? And what I would suggest... And you're still litigating in the District Court. That's correct. As a matter of fact, you're litigating... You've litigated... You had a hearing last... A week ago today. That's correct, Your Honor. In the District Court. Yes. Why is it that nobody's kept us apprised of the fact that you're litigating in the District Court, since you've got the so-called injunction? Certainly. The recent... Perhaps we should have apprised the Court of the recent developments, although I don't know that the recent developments that deal with post-trial compliance issues surrounding my client have much to do with the finality or not of the original order. And certainly in our briefs, I think... Judge Jackson, at the hearing last week, said that there was a final judgment. I haven't... I looked at the transcript. Certainly. It's on the website or something. One of my law perks found it. You had a hearing last Thursday, and Judge Jackson said there's been a... He entered a final order. You say you're on part of that. Why do we do it piecemeal? I think what happened here, and we have outlined this, I think, in the jurisdictional section of the opening, is that the January 15th, 2022 memorandum opinion from the District of Columbia, that was the foundation for the injunction, and ultimately it went to the question of whether we had properly classified these workers or not. By the same token, that opinion, although it made some findings in relation to back pay, left more to be done. And we thought it was fairly clear under this Court's initial Calderon v. Geico decision from 2014, that if you compare Calderon to what happened here, it's quite similar. And the Court in Calderon made very clear that when you have these open issues on back pay, it has led to a flurry of post-opinion briefing. Post-appeal briefing. You filed a notice of appeal in March. Correct. Last year. The notice of appeal. And at one point, you cite in your brief, I think, that the judge said there's nothing going to happen until the appeal is resolved. Yes. That's in your brief. Yes, that's correct. If I can sort of outline the sequence of events. And you've had bond proceedings, and contempt proceedings, and discovery proceedings. Well, I don't know about discovery proceedings. And some of those were initiated by the Department of Labor. But look. Well, the discovery proceedings. You had discovery proceedings. Y'all can't agree on what you're supposed to turn over in connection with trying to get to a final order. Sure. If you're referencing the discussion last week in the District Court, I was there. Well, I'm sure it was not just at that hearing. There were others, too, weren't there? No. There were no other hearings? The only post-judgment appearance in front of the District Court has been the proceeding that took place last week. Oh, it was? So all the rest of it was just on the paper? That's correct. All that litigation about the bond was just on paper? That's correct. And in fact, the bond litigation, the bond motion, was preceded by other motions that we can see are still unresolved on the District Court docket. What happens if you recollect the courts of January? Well, why wouldn't we just let you all finish that case in the District Court and then come up here? I think the court... I mean, that's what we do normally. We hear final order fields. Final decisions. Rule 1291 says we hear on final decisions. You can appeal from a final decision. Certainly. And the injunction says comply with the law. That's like my mother telling me to stay out of trouble when I went to college or something. We wonder whether either are effective. That's right. Can I ask you maybe a slightly different way? Could you have chosen... You know, the injunction has immediate effect, and that's why 1292 tells us that we have jurisdiction and a locutory over an injunction. But could you have instead chosen to wait until all of these issues were resolved and raised it as a single appeal? The answer is that it was not clear to us whether we could. In part because there is a dispute in the District Court briefing, Judge King, that you alluded to. If you look at the briefing that began on March 13th of 2022, this was within the 60-day window where the court said on January 15th that it had a 60-day window where it was going to take more information, order the parties to cooperate, and it was going to look at payroll records that postdated the last set that the court had from I think June of 2021 that was going to arrive at a final back pay number. And so you had concerns that, in a sense, is sort of protective, right? Because some aspects of what the District Court said and did suggested it was a final order, and others suggested that it was not. But there was no doubt in your mind that you could appeal the injunction based on 1292, and so that's the approach you took. And the part about the back pay, those arguments are really sort of protective. You don't really think we can reach those questions, right? No, we certainly don't think you can reach the back pay question now, which is why we haven't briefed the back pay question. The District Court still has probably about 100 pages of briefing on its docket on the back pay question that it has not yet ruled upon. And that's the motion that we filed on March 13th. There was a Department of Labor opposition on, I believe, the 27th, and then a reply brief on April 10th. So can I just transition you back to the first, and I want to hear what your third point is, but on the first point, the District, you say they did not have control over the manner in which the nurses conducted their work. And the District, and I just want you to help me understand, the District Court said, no, no, no, there was extensive control because they addressed their dress code, right, and their compliance with HIPAA and their timeliness, right? And why, in your view, is that not, like, extensive control over the manner in which a nurse does their job? I think because, number one, it has nothing to do with the core nursing tasks that they are being paid for. If you look at this Court's analysis of the control factor in McFeely and Chow and in Schultz, the control analysis focused on the core tasks that the worker was being paid to carry out and the extent to which those were managed by or controlled by the alleged employer. Here, we think things like show up on time, don't sleep in patients' beds, wear appropriate clothing, are more appropriately analogized to some of the baseline contractual expectations that this Court in McFeely said can properly be enforced as part of a contractual bargain. I think the other answer, and maybe the cleaner way to look at it, is simply to contrast the record in this case with the four healthcare registry cases from other courts that have been relied upon by the DOL. In each of those cases, you have a defendant that has in place a supervisory infrastructure that they've invested in geared specifically toward monitoring and controlling the manner in which the nurses perform their work. That infrastructure consists of requirements... And by that, you mean the manner in which they perform their work. You mean the medical side, right? Not the like things that would apply if they were cleaning the hospital as well, right? I mean, the dress code and don't harass people and don't sleep in a patient's bed would apply no matter what job they were doing in the hospital. If you were sending somebody in the hospital to clean it or to be a guard or to do any other job in the hospital, you'd have to do those things. That's correct. And those would apply with equal force whether the arrangement for any of the work as you described was contractual in nature or an employer-employee relationship, right? Those baseline expectations are omnipresent in any kind of working relationship. And I think, again, if you look at the cases that they rely upon, the infrastructure these other places had included routine site visits by the defendant to the facilities where the work was being carried out, included employment by the defendant of medical liaisons who were capable of overseeing the nursing work and providing feedback and control in relation to their medical duties. Mr. Paffert, but how do you then reconcile that with the ability to discipline? You talked about this global infrastructure, but now when you start to, in fact, breach or not do what you've been told to do, this isn't just simply don't sleep in patients' beds, but when that happens, then I can discipline you. Help me reconcile there. Sure. I think, again, as this court has emphasized in its classification cases that we discussed in the briefs, there are baseline contractual expectations, including those that go to performance and to the nature of the work to be carried out, that a counterparty to a contract is allowed to enforce. And the point that we make on discipline is that the issues that gave rise to discipline by steadfast, number one, were relatively isolated against the backdrop of the volume of activity here, but number two, none of that discipline or alleged discipline by steadfast had anything to do with the manner in which the nurses were carrying out their medical duties. Instead, it goes to some of the baseline things we discussed a moment ago, such as show up on time. If you're going to call out for a shift, please give us at least two hours' notice. Don't sleep in patients' beds. And then beyond that, the more significant discipline in the record was discipline initiated per directives from the facilities, and there's not a lot of specifics about what led to those DNR designations by the facilities, but to the extent that we do have a couple of anecdotal examples in the record, it involves, in one instance, suspicion of a nurse being under the influence while on the job, and in the other instance is suspicion that the nurse was diverting drugs from the hospital while performing her duties. What was the discipline that steadfast imposed in that scenario? In which scenario, Your Honor? In either of them. Tell me both, right? So the one that was dealing drugs and the one that was drunk. Sure. Like, well, the drunk and the drug scenarios, right? Those examples, we would say that the discipline is not actually being imposed by steadfast. No, no, but what did steadfast do, is what I'm asking. It received a DNR designation from the facility. What is DNR speaking of? It was not confirmed. Okay. So steadfast would make sure that that nurse was not able to return to that facility. But that's not discipline, right? What I'm trying to ask is, what did steadfast, I mean, so the hospital says, don't send the drunk nurse back. Yes. All right? They don't send the drunk nurse back. That doesn't strike me as discipline, right? But what I'm asking is, what did steadfast do that was discipline, I mean, did they, like, garnish their wages? Did they put them in, like, a penalty box? Did they, what did they do? The only examples of discipline that steadfast would initiate in isolated instances would involve not allowing them, perhaps, to have as many shifts as they would otherwise want during a period of a couple weeks. I think one nurse may even use the penalty box kind of analogy. So that would be the mechanism of discipline. And in Chao, in the cable installers case, you had an alleged employer, right, that was capable of actually docking portions of the pay for deficiencies that were found in the manner in which they carried out their work, and that didn't defeat the contractor status there. Here we think both the nature of the discipline and, more importantly, what led to and did not lead to that discipline was such that it still is squarely on the contracting side of the line because, again, none of the supervisory infrastructure over how they perform their work. That's present in all of the cases that the DOL relies on. It's remotely present here. It's not even close. Can I? Just a moment to ask one more question. I just, as long as you give questions, you keep, you started off, and I don't want you to go into too much detail because your time's up, but I want to make sure I understand the scope of the argument. You started off and you gave us three things, and you got through the first two, and then you indicated that 17 of the 20 workers testified. Can you help me understand what that issue is? Yes. It's just going to the issue of, one of the issues that is in dispute, which is whether the nurses were permitted to also pull shifts from other registries parallel with their work at Steadfast, and what I was going to say in the introduction there was that of the 20 who testified, 17 were asked whether they also worked for other registries. Thirteen of the 17 said yes. Of the four who said no, two of them said it was simply their own personal preference that they didn't seek work with other registries, and there were only two instances, both of which involved nurses whose tenure with Steadfast ended in 2017, where nurses said that they didn't pull shifts from other registries because they perceived that if they did so it would be in tension with the Steadfast policy. So, help me understand, because the policy itself says that they couldn't do that, right? Right. And so there's like a non-compete, if we would. But just so I understand, your point is, if we're looking at economic realities, the economic reality here is that they were doing this for other providers, too. So once we sort of say we're not going to, you know, abide by the fact that it says they're an independent contractor, we're getting beyond the words on the paper, and we're looking at the economic realities, the evidence here shows that they were working for other people just like Steadfast. Yes, that's exactly correct, your honor, and the reason it's significant is because under the control factor and the profit and loss factor of the six-factor test, the fact that even within the closed loop of Steadfast, you have a number of discretionary choices that are not typical of employees, starting with whether, when, and where to work, the ability to sometimes negotiate rates, and then the ability to sort of go on and off the Steadfast registry as they saw fit and take travel shifts or take shifts elsewhere, that would be a lot of contractor-oriented choice even if Steadfast were a closed loop, but it's not. Steadfast wasn't a closed loop. The vast majority of these people said it was common for them to work with other registries. Steadfast's primary registry competitor at trial, their representative, Peyton Leck, said yes, nurses who are on our registry are on theirs and vice versa, and so when you add in the dynamic or the variable of other registries and you step back and look at what they have a vast array of profit-maximizing choices that carry with potential benefit and potential risk, all of which are fundamentally absent in a typical employment relationship, and so that's why we wanted to emphasize and highlight that aspect of the record. Thank you, counsel. Thank you, Judge Gates. I've got a couple questions. You had a seven-day trial. Right. Judge Jackson conducted a seven-day trial, and you had several witnesses, and then he wrote this order of January and specified, what, 89 findings of fact or something like that? That's correct. And you haven't challenged specifically any of those findings of fact on appeal? They have to be clearly erroneous. You say everything's clearly erroneous, basically, a shotgun approach, but don't you have to challenge the findings of fact? Are you going to say they're wrong? I'm not sure in this context that we do. For the simple reason, I can use what I just discussed with Judge Richards in this example. There is a finding embedded within paragraph 42 of the district court's order that nurses were disciplined if they worked shifts for competing registries. There's also findings in there that they were covered by worker compensation benefits and covered by insurance benefits. Don't you have to tell an insurance company that they're employees to get insurance benefits for them? That they're workers' compensation benefits for them? I don't know the scope. Well, sure you do. I don't know the scope. That's what worker compensation is for, isn't it? Employees? I don't know what the scope of workers' compensation benefits are. But anyway, does the, have you ever read Rule 65D of the Rules of Civil Procedure? I believe so. It has to do with injunctions, what they have to contain. They have to state the reasons why the injunction issued, state the injunction's terms specifically, and otherwise describe in reasonable detail the act or acts to be restrained or required. Does this so-called injunction comply with Rule 65D? I think it's a tough call simply because obviously it's concise. It's one sentence. It's concise in its wording, but I guess the question would be whether ordering the defendant to comply with the Fair Labor Standards Act going forward in context where it's saying that they've been classifying them improperly in the past. But the rule says specifically. And state in reasonable detail the acts or acts restrained. But anyway. I think the question would be how much can one say is incorporated by reference. Those are requirements of an injunction. Simply through the phrase about complying with the statute. And certainly the injunction says what it says, right? It's not terribly detailed. If it doesn't comply with it, there's no jurisdiction here. But it's still an injunction, right? I don't think that Rule 65... Well, it says that injunction must. The word must is in Rule 65D. An injunction must do these three things. I've never understood Rule 65D. Well, it says that. This is the rule of civil procedure that defines, that requires, says what's required for an injunction. So if it doesn't satisfy those requirements, it isn't an injunction. I would say for purposes of the reference to injunctions in the jurisdictional statute 1292B, it's an injunction if the district court calls it an injunction. It may fall short of the procedural content that's required under Rule 65. But I have a hard time understanding how under 1292B, the entire point is that you can come up on an interlocutory basis and challenge an injunction. Part of your challenge might be that the content of the injunction falls short of the Rule 65 requirements. But I don't think there is a contradiction between the jurisdictional ability to challenge it and the procedural ability to say that the content of it falls short of what the district court should have done. So I do think that the word injunction means different things in those two different provisions, yes. Well, it doesn't say it could mean different things. It just says an injunction must do these three things. Okay. Judge Dawson, do you have anything else? Can I just follow up on that briefly? Do you have any reasonable detail? It depends on the circumstances, right? Did your client have any doubt as to the act it was required to take? What did the injunction require your client? What act did it require your client to take? I took it that we, in the context of the opinion, is to comply with the Fair Labor Standards Act going forward, specifically with respect to the provisions that govern payment of overtime and maintenance of records relating to that. So I would have taken it to be more, yes, to comply with the act, but to treat the nurses as employees. Yes. Right. That seems like to me, I'm not trying to put words in your mouth, but it seems like to me the reasonable detail here, if you read the entire opinion, it's hard to see that it's not clear that what you're required to do is to treat these nurses as employees. And exactly what that means, and then that leads to lots of other consequences, but that's the act that you're really required to do by the injunction. Yes, I think that that's correct. But the so-called injunction doesn't say that. It does say comply with the law. That's what I'm saying. That's what I asked you earlier. We're all required to comply with the law every day. I think that. We have to comply with the law. I think that. And you're told in this injunction, comply with the law. But the Rule 65D says an injunction must provide, must provide, state the reasons why the injunction issued. State the terms specifically. Describe in reasonable detail the act or acts to be restrained. That's what the rule says an injunction must specify. But in this context, I'm not sure that we could have left the time. You could have asked the judge, it says you don't comply with Rule 65D. You can read the rules and civil procedures as well as I can. You could have gone back and said they don't do it. We want to take an appeal and we want you to enter a proper injunction so we can take an appeal. That's fair enough. I suppose that's a path that could have been taken by trial counsel. But at the end of the day, it's worded as an injunction. In context, I think the district court believed that it knew what it was saying to the parties and the parties understood what its findings were. Well, you've been arguing about them. Last week you were arguing about them, whether you were supposed to supply the records, whether you were going to pay them as employees. There was a period of time that you didn't do it. And what the injunction was. You were last week arguing before the district court about it. I think the issues in front of the district court were not going to the core question of what the Fair Labor Standards Act means or what the one-sentence injunction meant in this context. It was going to things like... It was a one-sentence injunction. Do you agree with that? Yes. Okay. It's a one-sentence injunction and your position is it complies with Rule 65D. But Rule 65D says the contents of an injunction must be these things. And to be clear, I'm not saying that it complies with Rule 65D. My argument is that the jurisdictional statute that allows you to bring up an interlocutory challenge to an injunction allows you to bring that up even if the injunction is deficient and falls short of what 65D would otherwise require. You can appeal it even if it doesn't comply with Rule 65D. That's correct. That's right. I understand that. Okay. Judge Dawson. Thank you. Judge Richardson. Thank you. Ms. King. Welcome, Ms. King. Good to have you here. Thank you. May it please the Court. Anne King on behalf of APHLE, Secretary of Labor, which is still Martin Walsh at the moment. The district court in this case correctly concluded that under the economics reality test, the nurses that Steadfast placed in healthcare facilities were employees. I have a couple things I'd like to respond to in Steadfast's argument. One argument that Steadfast made here and in its brief is that the control factor is limited to supervision over the manner of work. But I think Steadfast understands what that means too narrowly. In McFeely, the court phrased it that way, phrased the control factor that way, but then went on to look at the employer's role in setting the pay rates for the workers in that case, the employer's role in scheduling, and the employer's role in imposing workplace conduct roles. McFeely shows that all of those considerations are relevant to the control factor as this court— So help me understand that. So if you're a company, you do agree that a company could in theory hire an independent contractor. That that is a category of people that does exist. Yes, Your Honor, of course. But your argument is that if a company hires an independent contractor, that they can't have policies prohibiting sexual harassment? No, Your Honor. Because if they do, they're now employees. So if they do anything to limit sexual harassment or to require work-appropriate attire, or in a medical context to comply with HIPAA, that any time they do any of those things, that that turns them from an independent contractor into an employee. No, and I think that goes too far. But that is what Steadfast seems to suggest is our position. No, I don't—so you don't have to put it in Steadfast's words. You can put it in my words. I think that's your position. Oh, Your Honor, I disagree. So Steadfast has argued or seems to argue that any feature of a relationship that could be part of an employment relationship and an independent contractor relationship should not be analyzed under the economic realities test. But that can't be right because— No, but there are basic requirements. The point of this is when we look at whether you have control over the manner in which the work is performed, we don't look at the very basic requirements of sexual harassment training to say that that renders someone an employee, that there are some baseline requirements that a responsible employee or a responsible company would take with respect to anybody to say you need to comply with HIPAA. It's a federal statute, right? You need to comply with sexual harassment standards. You need to do the baseline things that have nothing to do with the work that you're actually performing but that's just like necessary to be a worker in the modern society. Your Honor, I'm hearing a couple things in that question. And one thing, I'd push back on the idea that, again, we can't look at these sort of conduct rules or things like baseline expectations because it's really how they're implemented. So the example of training I think is helpful. So if an employer had a sexual harassment policy, I don't think that would be probative of employee status if it held an independent contractor also to that policy. But to provide training on a subject is a different matter. Oh, I'm sorry. Wait, let me help. Help me understand. So they can have a policy, but if they take steps to ensure that policy is followed by training them on the policy, that that transforms them from an independent contractor? I'm surprised the Department of Labor thinks that sexual harassment issues should only be addressed in policies and not training. I mean, that's the message the Department of Labor or you're giving to contractors, right? Is to say, if you're a company, that you can write sexual harassment policies, but if you provide training on those sexual harassment policies so that you ensure that your employees are not sexually harassing others, then they become employees instead of independent contractors. I disagree. Certainly training, and I disagree that that's our position. I certainly train. I thought that's what you just said. You just said if they had a policy, fine, but if they provide training, no. No more independent contractors. Our position is really that training on that subject or any other subject would be different than simply setting baseline expectations of conduct, and it's really, it's probative of employee status. It wouldn't be determinative of employee status, and that's why we pointed to, I can give an example regarding the training here. So, STEPS Act took the role of training nurses in HIPAA compliance and in other matters. Now, if trainings like that are required, somebody has to do it. The independent contractor could do it themselves, which would certainly be a thumb on the scale for independent contractor status. The client facility could do it, or the agency that places nurses could do it. Now, here it was the agency that provided that training, and so it could be different if the nurses took on that practice of seeking out training for themselves, but I don't think we are not trying to take the view that setting baseline expectations or even providing guidance or training on that is definitive as to independent contractor or employee status. I can back up for a moment and just emphasize again that this is a totality inquiry, as this court has emphasized in McFeely and Schultz and other cases. No factor is dispositive, but it's not meant to be a checklist or a mechanical inquiry, but it's something where all the facts are analyzed. And so, to the extent that STEPS Act is suggesting that features of both independent contractor arrangements and employer relationships can't be considered in the totality inquiry, well, that would carve out very little that's left for the totality analysis. And again, I think there's some helpful... Can you help me understand a factual question? Your colleague started talking about it, and I had a question about it. So when I look at paragraph 42 where Judge Jackson says that employees were disciplined for working with other registries, and I looked at the record sites or tried to look at the record sites that he provided, I had a little trouble finding the evidence that Steadfast disciplined its nurses for working for other registries. Can you help me find where in the record that finding was supported by any evidence? I believe some of the strongest evidence of discipline comes from Courtney Drang, who worked in the office at Steadfast. So she wasn't a nurse, and she didn't have, you know, an interest in either way, but she witnessed Lisa Pitt, who is the owner of Steadfast, disciplining nurses. I also just want... But my question is quite specific, and I think, at least I don't recall her testimony on this point. The question is, were nurses... that they worked for another registry? That's the question, because the record, as far as I can see it, has no support for that conclusion. I mean, I tried to look at the record that was cited. I found nothing, and I just want to make sure that I'm correct, that there is not a shred of evidence that supports that conclusion. I looked at our briefs at page 37, and Drang specifically testified about Pitt disciplining nurses for contacting client facilities. And is contacting client facilities working for another registry? Well, I think that is related, and I would also just like to point out that our view... I'm sorry. Before you go to the next point, do you agree with me that there is no record evidence that any nurse was disciplined for working for another registry? No, I don't agree with that. But, okay, can you... Before you go to your next point, can you point me to where in the record I could find that? I would think the best place that I could point you right now would be our citations on page 37 to 38 of our brief. Thank you. And I would also just like to point out that it's our view that the mere existence of the non-compete clause, regardless of whether it was enforced, is a very strong indicator of employee status. And for that reason, it's not something that you would typically see in an independent contractor arrangement where a putative employer prevents the worker from working for other entities. And really, that brings us back to the core question here of the economic realities test. The question is, is this worker working for the company's business, or is the worker in business for themselves? And when a worker is subject to a non-compete clause, even if it's not enforced, that could be chilling to the worker. That is strong evidence, again, very probative of employee status that they're not working in business for themselves. Ms. King, you've already conceded, though, that that is not unique in any venue, whether it's an employee status or if it's an independent contractor. You've also said that there's no one factor that's dispositive of all. So we've already talked about two where I haven't really heard a specific answer as to why it weighs in favor of your position, one being non-compete and the other being the discipline. So as we start to check off the items where it's not really clear whether they weigh in your favor, aren't we running out of items to discuss? Well, Your Honor, I would push back on the idea that neither of those items are probative. But if the court disagrees, then I could point to, again, I think it's helpful to look at McFeely, which, again, considers who sets the pay rate, workplace contract rules, and schedule setting. Can I ask this question? On the pay rate, if you're an independent contractor, whoever's hiring you is setting what they're going to pay you. I'm having a little trouble understanding why that cuts one way or the other. Well, I don't think that's always true, Your Honor. I have a tree that I need to have cut down in my backyard, and I just got several bids from independent contractors, and they were different. So then I have the opportunity to choose which one I would like to accept. So one reason it goes to control is that a worker's pay is sort of part and parcel of the relationship between the employer and the worker. And, again, it goes back to this, are you in business for yourself, like the tree workers who gave me bids that they themselves had the opportunity to set, or are you accepting a rate that someone else has negotiated and working for that employer? Can I ask you about a case, and it's not a game of gotcha, and if you're not familiar with it, you can just say I'm not familiar with it. I'm not trying to play that game. We decided a case in 1997 called Celiac versus Inova Health Services or Health System Services, one direction or the other. Are you familiar with that case? No, I'm not familiar with that case. I'm happy to answer any questions about it. Yeah, so it's a case about whether an emergency room doctor is an employee or an independent contractor, right? And it talks in great detail about the unique nature of the hospital setting. And among the things it talks about is this idea that if you're a hospital and you – HIPAA didn't exist in 1997, but the equivalent of 19 – if you're a hospital and just because you require compliance with federal law, that doesn't make you an employee, right? And that, in fact, we have to look to the nature of the location to understand what really cuts one direction or the other. And it's focused on control, but it talks about a number of other factors as well that strike me as quite analogous to what we have here. And there they found that the emergency room doctor was an independent contractor and not an employee, even though I think in ways much more significant than here, the hospital controlled what the emergency room doctor did. And so I'm having a real hard time squaring your arguments and the district court's conclusions, not the factual findings, but the conclusions, with our decision there. And I get that the district court didn't have the benefit of that decision. The parties have not briefed it. And I'm not trying to ask you to comment on it, but I wanted to give you an opportunity to respond to it if you wanted to. Well, without knowing the details of the case, it strikes me that the opportunities for profit and loss factor might be relevant here in distinguishing the emergency room doctor Help me understand why. Because it seems to me the doctor there wasn't paid on a contingency. The doctor wasn't like, if the guy lives, you get $100, but if he dies, you get $50. I get that, right? That would be a surprising payment structure. Right. The Department of Labor might have other concerns about that. I totally get it. But it looks a lot like the sort of payment structure we've got here, right? In this case, it's the hospital, not a service. The hospital's setting the pay rate, right? But that doesn't make a difference there. Well, generalizing about what I know about doctors and sort of practices of work of doctors, what I meant was that the emergency room doctor maybe does not work. Maybe engages in outreach, advertising, marketing to market himself to different hospitals and would, by virtue of the fact that he applied managerial skills, potentially have the ability to maximize his profits. Here, there's nothing of that type, and I think it's also important to that factor to emphasize that the nurses didn't bear any downside risk, which is an important feature of independent contractor relationships. Again, it goes back to that question, are they working for the business of Steadfast or are they in business for themselves? And many doctors are in business for themselves and engage in that type of marketing to obtain opportunities. One of the points in that case was that doctors are often exercising independent judgment. And I would have thought as a natural matter that so too are nurses, right? And I'm not trying to get into the debate about the relative value of doctors and nurses, although I think many nurses think that that's reversed. But it seems to me that doctors, and the court recognized there, exercise lots of independent judgment. And so too, at least I would have thought, nurses exercise independent judgment about what to do, when to call the doctor in, how to treat situations that a doctor's not involved in. And so what I'm curious about is the district court made the finding that nurses, and this is paragraph 43, nurses do not exercise independent judgment. And I guess I'm sort of curious about that factual finding as well, because I didn't see that supported in the record either. And I guess it's not a good reason to question something, but it runs counter to my intuition that nurses exercise all sorts of independent judgment. And so is there somewhere in the record that I could point to to suggest that the job of a nurse or the job of these nurses involves no independent judgment?  I don't think that any exercise of independent judgment would defeat employee status. I agree. I'm just looking at the factual finding, right, that says the nurse exercises no independent judgment. Yes. I think, as I recall, the citations here go to sort of the idea that these were very general nursing tasks that the nurses performed versus an ER doctor might make a high-level decision. And, again, I'm not commenting on nurses versus doctors, but one thing ‑‑ I mean, was there really evidence? I mean, it's hard to ‑‑ I mean, I confess, finding these citations is not super easy, right, because they're transcript and PX numbers. But in the efforts that I made to do so, I didn't find any evidence to support the idea that nurses make no independent judgment when they're doing that. Right? I mean, maybe it's less independent judgment than an ER doctor. But to say they exercise no independent judgment, I didn't see that in the record, and it is, like, strongly contrary to, like, my view of the role of a nurse in a hospital. And I get this may not be dispositive of the question, but I just want to understand, you know, if we're ‑‑ you know, we generally refer to these factual findings, and if it's true that a nurse exercises no independent judgment, that's one thing. If they exercise less independent judgment than a doctor, that's a very different thing for our calculus. And so if there's record evidence that there was no independent judgment exercised by any of the nurses in this case, I'd like to know about it. Your Honor, I think it's that evidence that the district had in mind, that these nurses were performing very routine tasks. But can I emphasize something else that I think helps shed light on that? So the placements here were temporary placements where healthcare facilities needed someone to fill in. And you're not ‑‑ it's reasonable to think that these facilities are not going to ask for these temporary workers to exercise a great deal of judgment. It's just sort of the nature of ‑‑ That might be true, maybe not a great deal of judgment, but to say they exercise no independent judgment, I mean, that's, like, a really strong ‑‑ I mean, that might work if you're making widgets, right? So if you're, like, you know, your job is on the assembly line and you turn this screw two and a half times and it goes down the line and you have to turn this screw two and a half times, right? That guy might not be working exercising independent judgment, right? But to say a nurse exercises none. I think that any job, if you're looking at it that broadly, it seems like any job would involve some independent judgment. What I think could be helpful here is to consider this in the lens of the economic realities test. Are the nurses exercising independent judgment in the sense that they are making decisions about the business for themselves? And they aren't really. They're engaging in routine care. You know, I know I keep repeating that phrase, but I think that lens is important to think about. Are these workers in business for themselves or are they working in somebody else's business? I'm happy to address any other questions. Well, I want to hear about jurisdiction. Yes, of course, Your Honor. I want to know why y'all are still litigating down there when there's an appeal pending here. An appeal, as a general proposition, stops things in the district court except to act in aid of the appeal. Do you recognize that? Yes. And it's my understanding that the district court believes that it had jurisdiction over the ongoing, despite the pending appeal, over the ongoing show cause and post-trial back pay proceedings. And you all were still litigating. And you had bond proceedings. The brief says they stopped. And nobody ever told us anything different. Well, the bond proceedings are actually more related to the appeal to attempt to sort of freeze things in place while the appeal is pending. So I don't think those are inconsistent with the appeal. So what do we have jurisdiction over? In our view, we don't disagree with the idea that this court can hear with steadfast contention that this court can hear an appeal over the injunction. I would like to point out also, though, that the district court's opinion that we all know so well does award back pay and liquidated damages. And steadfast had not contested up to that time the back pay calculations by the department. And so that is why the district court said that steadfast owes the back pay calculations as calculated by the department. Now, after trial, they have... So that's not part of the injunction, is it? It's not part of the injunction because... So we don't have any jurisdiction over that? If you agree that they have jurisdiction to bring this appeal... We are not contesting their jurisdictional statement. So it's up to us to contest it. We have to contest it because we always have to be satisfied that we have jurisdiction. Does it satisfy Rule 65D? And your honor said that that has to do with... I said it. You're the lawyer here for the United States of America. You know what it says. That it has to have a clear statement of...  It has to be an injunction. And to be an injunction, it must satisfy these criteria. I'm not... I don't have a direct response to that at the moment. I do agree with Judge Richardson's suggestion that the sort of core of the injunction is that it would enjoin treating the nurses as contractors. So you say we could ignore Rule 65? I would not contend that. So the word must doesn't mean must in the context of Rule 65D. And the fact that you still have proceedings that you haven't told us about. And I have... Looked to me like. Isn't that correct? Yes. As to this case. The bond and the post-trial back pay calculations. Is that all? I believe those are the four issues. How about the records? How about the fact that the government claimed you hadn't been supplied with the records? Yes. And you claimed... Is that not true? I would have to confirm that, your honor. Were you at the hearing last week? No, I was not at the hearing. You were not at the hearing last week. We have a trial team that had focused on that. You're the only lawyer we have here to talk about it. That's true. If your honor found that there was a record issue as well, then I'm sure that's correct. I think they talked about records or motions about records not being disclosed or provided. And... Anyway. I was just sort of flabbergasted that the injunction says you have to comply with the law. Yes, to classify the workers going forward as employees. No, you're adding to it. You're explaining that... And you agree that there's a right of appeal from that statement. Again, we're not contesting it. That somebody has to comply with the law and they can take a right of appeal. Again, we're not contesting it. Ms. King, let me make sure I'm clear. Are you then asking us to infer what the injunction is so that we can therefore have jurisdiction over it and we can address the issues that have been argued about today? I am struggling a little bit with the concept of do we have to get you there versus you presenting it to us. I don't think that the nature, the contours of the injunction require significant inference because the underlying claim here is whether Steadfast correctly classified... The underlying issue is whether Steadfast correctly classified... And so there was an order issued in that regard. Yes, and... There was a declaratory judgment, is what I would describe it. You got a declaratory judgment that they were employees. Yes. And you didn't need an injunction. And here... Everybody has to comply with the law. Everyone has to comply with the law, whether they're in court or not. We're all obliged to comply with the law. If you want to enjoin something, to require something or restrain something, Rule 65D says you have to do these things. You have to specify. You must specify and be particular. That's what it says. And that seems to me like you agree and you all have an agreement you want to bring an appeal. Which would mean that if you don't really have a right of appeal, that we're giving an advisory opinion on things. I certainly understand your concern and there isn't any... And we love having final order appeals. We don't like piecemeal appeals. I don't know if this is helpful, but in terms of the inference question... The what? The question about inferring the nature of an injunction. Good question, yes. Yeah, I agree. So, one thing that... Which is what your friend on the other side basically said and what you agreed with. That we need to infer what the parameters of the injunction are and go forward as if this is a proper injunction appeal under 1292A1. Can I clarify my response? Oh, yes. My response is more that if this court believes that it would be necessary to infer the nature of the injunction, I think that is a simple inference because the sole issue was the classification issue. There is no dispute over whether workers worked over 40 hours a week and there is no dispute that none of the workers received overtime. Go ahead, sir. I thought your answer was going to be slightly different, right? Which is that the injunction is not quite as broad, right? It doesn't say comply with the FLSA, right? It says that the defendants are enjoined from committing further violations of the FLSA and that follows 29 pages where the district court described what the defendant was doing to violate the FLSA, right? And so, I thought the inference came from this idea of further violations, right? So, it's gone through and it's described over 29 pages. And it's true. The one sentence doesn't give us much, but the reference to committing further violations tells us that we're not talking about just generally comply with the law, right? We're talking about the violations that have been heretofore just described in the previous 29 pages. And that approach may sort of narrow the scope of the injunction. It narrows the scope of the injunction and makes it even less necessary. But you have a declaration by the court that their employees, a declaration, a legal ruling, which in the absence of an injunction could be appealed as a final order appeal. But you get that extra language in there, however you construe it, whether you infer it or whatever you do, as limited as it is, don't violate the law anymore. Then you can appeal that and argue we don't want to be bound by an injunction that tells us not to violate the law anymore. Yes, and I... The injunction really doesn't have anything to do with the declaratory relief. Don't violate it anymore. The FSLA. That's the statute. And I think your Honor may be putting your finger on something else that occurred to me, which is that we're all required to follow the law. Companies are required to follow the FLSA. But there is a difference between a court order stating that, as Judge Richardson said, and stating reasons why the court believes that the entity was violating the law and directing the entity to comply going forward. It makes them subject to contempt. Yes, exactly. So it can be enforced. You could get a show-calls order. Exactly. It's something we're familiar with here. Well, you could get that whether you had an injunction or not. You could get that whether you had an injunction or not. Under a declaratory judgment, is that what your Honor had in mind? Well, you have the declaration. You have a declaration. That's what you have here. A declaration after a seven-day trial. A legal conclusion that they're employees. And then there's injunctive language, which you asked for in your complaint. It seems to me the absolute surpluses. I'm not sure if that's right. I know that one reason we tend to request injunctions in our FLSA complaint is because of the court's decision. In the absence of it, they could have filed a notice of appeal from a final order. Yes, certainly that would be a route that would be available. That's right. And so they did it this way, and you get a 1292B, and you don't have a final order, and you're still litigating, and we're litigating. Here, you had a hearing in the district court last week in Norfolk, and all the lawyers were down there. Now you've got another one up here, and it's going to go on for who knows how long. It's a difficult question. It's not a tough question to me. The district court is supposed to handle the case, and then it comes up here with a final order. And if you try to appeal an injunction that's not an injunction, then you don't have an appeal. You can come up here and argue about all the stuff, and they don't say that any finding of fact specifically is erroneous. I agree. I mean, Judge Richardson's mind it pretty well, I think. For them, they don't lay out and say anything's factual error. They have to be clearly erroneous. He had, what, a seven-day trial, and the findings of fact, the conclusions of the law. He said they're employees. Yes, Your Honor, we agree with that. Then he added this one sentence to it. Don't violate the law anymore, which I thought, well, that's like my mother telling me that they had her troubled. That I should know better. Well, they should know better, too, after he tells them that they have a right of appeal. A right of appeal from a final order appeal. We don't have a final order, and you all are still fighting over records and bonds. I don't know what else. But anyway, Judge Dawson. I'm satisfied. Thank you. Thank you, Your Honor. Thank you very much, Ms. King. Mr. Pafford? Yes. So, three overarching points that I hope to be able to make. First, with respect to the question of whether we're challenging specific district court findings, I think this intertwines with the arguments we have made clear in our briefs, Dr. Byrne approved, and the scope of the allegations. For any finding in isolation, other than maybe a couple, which we, again, challenged in the briefs, the whole question about whether they could work for other registries, it is possible for some of these findings that there might be some shred of evidence, somewhere in the record, that in one particular instance, something happened that way, right? But fundamentally, that's not the question before the court. The question before the court is, looking at the six-factor test, looking at the scope of the allegations, looking at the department's burden of proof, the department hasn't contested, can we say in the aggregate that this classification decision that our client made was incorrect? And we think the answer to that is plainly no, for a lot of the reasons we've talked about today. Second point I want to make ties to the substance of some of the discussion, Judge Richardson, that you had, and Judge Dawson, I think this was referenced in some of your earlier questions. I think the question of independent judgment goes to the second factor of the test, which is the opportunity for sort of profit and loss, and whether they're making choices. And a lot of that evidence here doesn't so much turn on the skill the nurses have, which I think they have to exercise a ton of skill, we'll get to that in a moment, but the independent judgment they're exercising, as we've noted, is in the context of a wide range of choices they have to make on any given pay period about the opportunities they have not only within the steadfast loop, but from other registries outside of it, and all of the variables that they factor into that decision-making. And if you were to look at the testimony from Christopher Ryan Hopson, Sandra Boykin, Don Wooten, Courtney Turner, Penny Clark, Napoleon Alston, Dowsling Hall, Charlotte Lee Coates, these were all nurses who testified at trial and testified at length about the different things they do through steadfast and other registries to maximize their profits, to assess trade-offs, and to make these decisions that carry with them risk and carry with them benefit, which is exactly what the test is talking about. And we believe that the level of control they're exercising over their income-generating activities, which is what the test is about, is certainly equal to or greater than what the cable installers were doing in Chow under a very similar structure. The third point I'd like to make is that with respect to this question of skill, I would just direct the court to the best example is pages of 733 and 734 of the appendix. Tawanda Hall, one of the LPNs, is testifying. So this is someone below an RN, but they're an LPN. They're still a nurse. And she says, you have to know how to read a doctor's orders. You have to know what medications and what they do for the patients. You have to know some of the critical values of labs. You have to know how to deal with tracts, which I guess are tracheotomy tubes and G-tubes. And you have to know how to treat dialysis ports and things like that. Given that type of work, given the context of a lot of this working activity in the later years that keeps happening during COVID, I don't think there's any dispute that these are skilled workers under that prong of the test. And the district court found, indeed, that they were skilled workers. It just found, we believe wrongly, that that factor was outweighed by others. The final point I'd like to make is that on this question of the degree of control, imagine if the record were different. Imagine if the record here showed that Steadfast was exercising rigorous control over the schedules of the workers, was making them turn in medical notes and treatment plans, was doing site visits to the medical facilities where they worked, was employing on its own payroll medical liaisons to engage with the facilities, and had a detailed policy and procedures manual that governed how they did their nursing work. All of that was present in Gale, Hughes, Crouch, and LeMaster, which are the cases DOL relies upon. If that were present here, DOL would, of course, be pointing at it. They would be arguing that it was outcome determinative. Yet, strangely, the absence of any of those factors here, and instead all of the discretion that the workers have, doesn't seem to change the calculus because the calculus for DOL seems to be a moving target. And this court, I think, clearly emphasized that, ultimately, these questions come down to things where courts have to struggle with matters of degree and not make categorical pronouncements. And fundamentally, we think that is the flaw at the core of the district court opinion, is that rather than analyzing the details and the degree in the record on the core factors and measuring it against this court's precedents, particularly the structure in Chow, which is strikingly similar to the structure here, it just sort of found a bunch of facts, didn't sort of explain where they fit in under the precedent or the six-factor test, and instead shaped its analysis primarily around a bulletin that came out after the complaint was already filed, and that neither side argues is binding or determinative in this context in any of that. Can I ask a question about the 1292 issue? Sure. I just want to make sure I understand your argument here. 1292 allows you to appeal an injunction. And your argument, effectively, is that when the court says, we enjoin steadfast from further violations, that that is an injunction. That allows you to then appeal, right? That's correct. And then— It was argued that that injunction— Wait, wait, wait. Bear with me. I'll let you fill in as soon as I finish, all right? So that allows you to appeal. And then on appeal, there are an array of options available to you to challenge that injunction. You might say that it fails on the merits, right, that the merits that underlies it is wrong. You might say the balance of equities, right, wasn't properly weighed in deciding that an injunction was appropriate, right, in light of the other remedies. You might also say that Rule 65 was not complied with, right? All of those are arguments that are available to you on appeal from a given injunction. Correct. And here, you have not made the Rule 65d argument, even if maybe you could, but that's just a procedural issue that you chose not to raise. That's correct. And you've not argued here that the balance of equities wasn't properly weighed by the district court, although you could have, right? And so that argument is weighed. The only argument that you have made is that the merits determination that formed the foundation of this injunction was fundamentally flawed. That's correct. And if you look at page 30 of the district court opinion, under the section labeled injunctive relief, the last sentence right before the conclusion of the opinion says, therefore plaintiff, the Department of Labor, has shown good cause for enjoining defendants from violating the FLSA's overtime and record-keeping provisions. Our appeal is meant to tackle that head-on and say the plaintiff did not show good cause because the classification practices that we engaged in were correct and we should be able to maintain those practices going forward and not have them be deemed violation of the overtime or record-keeping provisions. And that is the argument that we've made challenging the injunction that was entered by the district court. And we think that under 1292A1, that gives this court jurisdiction, notwithstanding that this is not a final order because of all the back pay issues that Judge King alluded to. One record point I just want to make. You agree that the back pay is not before us. That's correct. That's not in this appeal. So the good faith point that you raised and briefed extensively about the conferring with the lawyer at some point is not before us. I think the only way the good faith point would be— Well, you briefed it all. I think the way it would be before you, though, is under this court's case law about appended appellate jurisdiction because the merits arguments and the question of whether we had reasonable grounds for the classification decision are so heavily intertwined. I think under appended jurisdiction theory, the court could reach that if it found it necessary to do so. One record point I just want to clarify for Judge Case. So you're saying the good faith is before us? Yes, I think it is. And you're saying the calculations are not before us? That's correct. So it is a piecemeal appeal? In that sense, it's piecemeal, yes. And you have not briefed jurisdiction? The jurisdictional question is not briefed here by either side. We tried to brief it. No, you didn't brief it. You made a statement. You made a statement that it was under 1292A1. And the government agreed with you. But in the context of that statement. The question is, what do we do with that? We have an obligation, whether the lawyers agree or not, to look at jurisdiction first. Always. First and foremost. Otherwise, we're giving an advisory opinion and we're conducting proceedings and you're writing briefs that are unnecessary. We resolve it all now, then, rather than now. Two points, if I could. One, I think our jurisdictional statement did anticipate this issue and identify for the court the backdate issues that remain pending and explain that that's why we believe 1292A1 was the proper foundation for jurisdiction. Number two, this is just a recordkeeping issue. You didn't say the backdate issues are not pertinent to this appeal. You didn't say that the good faith was pertinent to the appeal, did you? We believe good faith is. I think we tried to say that the backdate issues were not before this court. Well, the backdate issues were still going on, you said. They were still going on. But you argue about them. I don't think we're arguing about the competition. You say that all that is in aid of the appeal? What's going on below? What's going on below? No. Okay. Okay. I think it was a non-final order that, nonetheless, had an injunctive provision that allowed us to come up under 1292A1. One thing I want to clarify, because there is a lot that has gone on below, I just want to clarify this question that was addressed in the hearing last week about records. That is not the subject of motions practice. The issue there is there was a July 14th letter, not a subpoena, not anything that was covered by the order, asking for some additional post-trial records that were outside the scope of the court's order. We replied on July 28th, attempted to negotiate and didn't give them the records. DOL never replied to our July 28th letter, and now things have gone a bit sideways, as you can tell, from having read the transcript of last week's hearing. My only point is I think that that entire issue doesn't have much to do with any of the briefing that's on the district court docket or any of the stuff that is still being addressed down there on back pay. I just wanted to clarify, there were no motions, or there's no disputed motions practice at present in the district court on a pending discovery request or a subpoena or something like that. Okay. So your potential appeal doesn't cover the back pay. It does cover the good pay. That's correct. And again, I think that the theory on why good faith... But the good faith, okay. If it needs to be reached, it's simply a theory of pending appellate jurisdiction because the question of our reasonable grounds for the classification and the question of whether the classification decision is correct on the merits are heavily intertwined. If we win that the classification was defensible and correct or the DOL hasn't carried its burden of proof, you don't have to reach good faith at all. But if the court were to rule against us on the merits, then the question of how close were we, did they take reasonable steps, was this a defensible good faith position becomes a vital predicate of what you have to analyze for good faith. And so we think under this court's pending appellate jurisdiction case law, it could properly consider both of those inquiries if it needs to reach them. Again, we believe you should rule on the merits in our favor on the classification issue, which is ultimately a de novo question, and that you will not need to reach good faith. But if you did find that you had to reach it, that would be my theory for why jurisdictionally you could do that. Thank you very much. We appreciate the arguments of counsel. The matter will be taken under advisement. We'll come down and greet counsel, as we've done for years and years. We're back to doing that after the pandemic. And we will take a short break.
judges: Robert B. King, Julius N. Richardson, Joseph Dawson III